# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

_____

No. 24-ICA-79

_____

**FILED**

**February 6, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SPYRIDOULA L. MOSCHONAS AND GERASIMOS MOSCHONAS,
Plaintiffs Below, Petitioners

v.

THE CHARLES TOWN GENERAL HOSPITAL D/B/A JEFFERSON MEDICAL
CENTER AND JASON GIFFI, D.O.,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Jefferson County
The Honorable David M. Hammer, Judge
Civil Action No. CC-19-2023-C-32

AFFIRMED

_____

Submitted:  January 14, 2025
Filed:  February 6, 2025


Christopher T. Nace, Esq.
Paulson & Nace, PLLC
Washington, District of Columbia
Counsel for Petitioners

Melissa K. Oliverio, Esq.
Ryan T. Loos, Esq.
West Virginia University Health System
Morgantown, West Virginia
Counsel for Respondent The Charles Town
General Hospital d/b/a Jefferson Medical Center

Brent P. Copenhaver, Esq.
Dana Hantel, Esq.
Linkous Law,/ PLLC
Morgantown, West Virginia
Counsel for Respondent Jason Giffi, D.O.

JUDGE WHITE delivered the Opinion of the Court.

WHITE, JUDGE:

Petitioners Spyridoula L. Moschonas and Gerasimos Moschonas (the "Moschonases") appeal from three orders entered by the Circuit Court of Jefferson County: the August 9, 2023, Order Granting Motion to Dismiss Defendant Jason Giffi, D.O. with Prejudice; the August 18, 2023, Order Dismissing Jefferson Medical Center with Prejudice; and the February 1, 2024, Order Denying Plaintiffs' Motion to Alter, Amend, or Otherwise Relieve Plaintiffs from Judgment. The issue on appeal is whether the circuit court erred by dismissing the Moschonases' claims based upon its finding that their complaint was time barred pursuant to the West Virginia Medical Professional Liability Act ("MPLA"). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, we affirm the judgment of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 1 and 2, 2021, Mrs. Moschonas received treatment at the Charles Town General Hospital d/b/a Jefferson Medical Center ("JMC") after reporting to its Emergency Department for shortness of breath. While there, she exhibited additional symptoms, which the Moschonases claim were not properly diagnosed and/or treated by JMC. During her stay at JMC, Mrs. Moschonas suffered a debilitating stroke which was diagnosed on January 2, 2021. Shortly after her diagnosis, she was transferred to another

1

hospital[1] where she underwent a left carotid endarterectomy and remained in inpatient acute rehabilitation until she was discharged on January 26, 2021. Mr. and Mrs. Moschonas allege that she has permanent deficits because of the professional negligence which allegedly occurred at JMC.

On December 21, 2022, the Moschonases mailed their Notice of Claim and Screening Certificate of Merit from Dr. Michael Falgiani, M.D. to Dr. Giffi who received them on January 3, 2023. Dr. Giffi was one of Mrs. Moschonas's treating physicians at JMC.

On December 27, 2022, a Notice of Claim which included Dr. Falgiani's certificate of merit, was mailed to JMC. It is undisputed that JMC received the Notice of Claim on January 3, 2023. On January 20, 2023, JMC responded to the Moschonases' Notice of Claim by e-mail and asserted several deficiencies in Dr. Falgiani's certificate of merit pursuant to *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005). JMC's response did not request pre-suit mediation or indicate that additional information would be required before a decision could be made concerning pre-suit mediation.

---

[1] The patient transfer form signed by Mr. Moschonas indicated that Mrs. Moschonas was being transferred because of her stroke, and the reason for her transfer was allegedly explained to him.

On January 24, 2023, Dr. Giffi sent a letter to the Moschonases, by e-mail and regular mail, which served as both his response to the Notice of Claim pursuant to West Virginia Code § 55-7B-6(f) (2022) and as a notification of alleged deficiencies in Dr. Falgiani's certificate of merit pursuant to *Hinchman.* Dr. Giffi's response did not unequivocally request pre-suit mediation, but rather, stated that no decision could be made on mediation until further information was provided. The Moschonases provided the additional information on February 9, 2023, but Dr. Giffi never requested pre-suit mediation.

On February 28, 2023, the Moschonases filed their complaint against JMC and Dr. Giffi. According to Paragraph 29 of the complaint, "[h]ad Defendants met the applicable standard of care and provided proper assessments, monitoring, treatment, staffing, training and medical intervention, Spyridoula Moschonas would have had at least a greater than twenty five percent (25%) chance of having a greater outcome and would not have the current sequelae that she now suffers." The complaint did not allege any facts that might have prevented the Moschonases from discovering their potential claims for professional negligence within two years of Mrs. Moschonas's January 2, 2021, stroke. Nor did the complaint allege that the Moschonases neither knew, nor should have known, of their potential medical malpractice claim until sometime within two years of filing their complaint.

On April 21, 2023, Dr. Giffi filed a motion to dismiss and supporting memorandum of law, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, alleging that the Moschonases' complaint was not timely filed under the statute of limitations and tolling provisions of the MPLA. According to Dr. Giffi, the complaint had to be filed no later than thirty days after the date on which the Moschonases received his January 24, 2023, e-mail containing his response to the Notice of Claim, i.e., February 23, 2023.

The Moschonases filed their response in opposition to the motion to dismiss on May 8, 2023. In their response, they argued that under the operative language of the MPLA, the statute of limitations did not begin to run on their claims until thirty days after the statutory deadline for Dr. Giffi to respond, and, thus, the thirty days would start running on February 2, 2023, which required the complaint to be filed by March 4, 2023. Further, they argued that Dr. Giffi's January 24, 2023, letter did not decline pre-suit mediation and requested more information. Further, they suggested that nothing in the MPLA states that if correspondence is received in response to a Notice of Claim that a plaintiff must file the complaint within thirty days of receipt when the health care provider responds before the statutory deadline for doing so. In their response, the Moschonases did not argue that the discovery rule might apply to toll the statute.

4

On May 12, 2023, JMC filed its Rule 12(b)(6) motion to dismiss and supporting memorandum of law which also alleged that the Moschonases' complaint was barred by the MPLA's two-year statute of limitations. In an argument similar to Dr. Giffi's, JMC alleged that the complaint was not timely filed because it was filed more than thirty days[2] after the Moschonases received JMC's January 20, 2023, email containing its response to the Notice of Claim. The Moschonases did not respond to this motion.

In an order dated August 9, 2023, the circuit court granted Dr. Giffi's motion to dismiss. In its order, the court found that civil actions governed by the MPLA are subject to a two-year statute of limitations pursuant to West Virginia Code § 55-7B-4(a) (2022), which states:

> A cause of action for medical injury to a person alleging medical professional liability against a health care provider, except a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, arises as of the date of medical injury, except as provided in subsection (c) of this section, and must be commenced within two years of the date of such injury or death, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such medical injury, whichever last occurs[.]

[2] Technically, the thirtieth day from receipt of the JMC response to the Notice of Claim fell on Sunday, February 19, 2023, and the next day, Monday, February 20, 2023, was President's Day, a legal holiday. JMC has not argued that the deadline for filing a complaint was earlier than February 21, 2023, and this is not an issue on appeal.

The court also noted that the statute of limitations may be tolled as to a health care provider who is served with a notice of claim and certificate of merit pursuant to West Virginia Code § 55-7B-6(i)(1):

> Except for medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, and except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of mail of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs.

Based on the allegations in the complaint, the circuit court determined that the Moschonases' cause of action arose no later than January 2, 2021. Thus, the statute of limitations would have expired on January 2, 2023, unless one of the statutory tolling exceptions applied. According to the Supreme Court of Appeals of West Virginia ("SCAWV"),

> subsection (i)(1) provides three circumstances that begin the thirty-day clock to file the complaint if the statute of limitations has expired: (1) receipt of a response from the health care provider; (2) no response from the health care provider after 30 days; and (3) notification from a mediator that settlement was unsuccessful. . . . Importantly, the only "response" that further tolls the statute of limitations under West Virginia Code § 55-

6

7B-6(i)(1) is the invocation of the right to pre-litigation mediation.

*Adkins v. Clark*, 247 W. Va. 128, 132, 875 S.E.2d 266, 270 (2022).

Under the circuit court's reading of *Adkins*, if a health care provider does not affirmatively require pre-suit mediation in writing, there is no tolling of the statute of limitations beyond the thirty-day time limit under either of the first two circumstances in which tolling would apply—this includes situations where a health care provider seeks additional information to determine if pre-suit mediation would be appropriate. *Id.* Moreover, the circuit court cited to Syllabus Point 2 of *Adkins* which states: "The failure of a healthcare provider to unequivocally decline pre-suit mediation in a response to a notice of claim does not serve to toll the statute of limitations beyond the statutorily prescribed time periods set forth in the provisions of West Virginia Code § 55-7B-6(i)." Syl. Pt. 2, *Id.* at 128, 875 S.E.2d at 267.

Applying the statutory language and the *Adkins* decision to the present case, the circuit court made the following conclusions of law:

19.  Based on the plain language of West Virginia Code §55-7B-6(i)(1) and the decision of *Adkins*, it is clear that the only scenario applicable to the circumstances in this case and the analysis of the end point of the tolling of the statute of limitation is Scenario 1 (30 days following receipt of a response to the notice of claim) because

7

Defendant Giffi did in fact respond to the Moschonas[es'] Notice of Claim and [Falgiani] Certificate of Merit by email and letter dated January 24, 2023. Because Dr. Giffi responded, Scenario 2 (no response from the health care provider) clearly does not apply.

20. Scenario 3 only applies if the health care provider has made a clear and unequivocal request for pre-suit mediation, which is not applicable to this case and the analysis of Defendant Giffi's motion to dismiss. Dr. Giffi's January 24, 2023, letter response to the Notice of Claim/Certificate of Merit neither requested nor declined pre-suit mediation. The January 24, 2023, letter did not invoke the right to pre-suit mediation. Scenario 3 does not apply to this case.

21. The [Moschonases'] Complaint was filed after the expiration of the applicable statute of limitations as to the claims against Defendant Giffi, even with consideration of the applicable tolling provision set forth in the [MPLA]. Therefore, Defendant Giffi must be dismissed with prejudice.

On August 18, 2023, the circuit court entered its order granting JMC's motion to dismiss. In this order, the circuit court incorporated by reference its decision with respect to Dr. Giffi, changing only the date when JMC was served with the Notice of Claim (December 27, 2022) and the date when JMC e-mailed its response (January 20, 2023).

On August 21, 2023, the Moschonases filed a motion seeking to alter or amend the circuit court's prior orders of dismissal pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. In support of their motion to alter or amend, the

8

Moschonases, using similar arguments to the ones that they raised in their response opposing Dr. Giffi's motion to dismiss, argued that the circuit court misinterpreted the MPLA, that *Adkins* does not apply, and that Dr. Giffi and JMC failed to decline mediation. They also alleged for the first time that the possible application of the discovery rule should have precluded dismissal.[3] Alternatively, they sought relief from the dismissal orders based upon mistake, inadvertence, or excusable neglect under W. Va. R. Civ. P. 60(b)(1), arguing that they "and their counsel had a good faith basis for believing that they were entitled to file their complaint thirty days after [Dr. Giffi and JMC's] opportunity to request mediation would have been due, i.e., the event that occurred last."[4]

A hearing was held on this motion on November 16, 2023, and by order entered February 1, 2024, the circuit court denied the motion. The court found that the Moschonases were rearguing theories that the court had previously rejected when it ruled on the motions to dismiss and had not established grounds for any other relief under Rule

---

[3] In Section V(C) of their motion to amend, alter or relieve from judgment filed in the circuit court, the Moschonases alleged that: "There is no factual record in this case at this time that Ms. Moschonas knew or should have known any earlier than February 28, 2023, that she had a viable claim for medical negligence." This section was titled: "It is unclear that the limitations period would have expired on January 2, 2023." Our record on appeal does not indicate that the Moschonases ever indicated or even suggested any medical condition or other circumstance which might have impaired their ability to know or discover that they had a potential medical malpractice claim before the statute of limitations expired. Nor is there any indication that they made any effort to develop the factual record which they complained did not exist.

[4] The Moschonases have not argued on appeal that they were entitled to relief under Rule 60(b) of the West Virginia Rules of Civil Procedure for mistake, inadvertence, or excusable neglect, so we will not address this potential issue.

9

59(e). The court noted that counsel's misunderstanding of the law was an insufficient ground for relief under Rule 60(b), noting that relief under Rule 60(b) is rarely granted because this is an extraordinary remedy and is only invoked upon a showing of exceptional circumstances. *Coffman v. W. Va. Div. of Motor Vehicles*, 209 W. Va. 736, 740, 551 S.E.2d 658, 662 (2001) (per curiam). The circuit court also rejected the Moschonases' argument that the discovery rule tolled the statute of limitations, finding that this argument was available when the motions to dismiss were litigated and, thus, was not timely raised. The Moschonases now appeal from the circuit court's orders of August 9, 2023, August 18, 2023, and February 1, 2024.

## II.  STANDARD OF REVIEW

The SCAWV has long held that the interpretation of a statute is a question of law reviewed de novo. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995); *Cummings v. Paine*, 249 W. Va. 568, 571, 899 S.E.2d 646, 649 (Ct. App. 2024).

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W. Va. 770, 461 S.E.2d 516 (1995).

"The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to West Virginia Rule of Civil Procedure 59(e), is the

same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins.,* 204 W. Va. 430, 513 S.E.2d 657 (1998).

"A motion to vacate a judgment made pursuant to Rule 60(b) [of the West Virginia Rules of Civil Procedure] is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974); *see also Tice v. Veach*, 250 W. Va. 482, ___, 904 S.E.2d 484, 492-93 (Ct. App. 2024). With these standards in mind, we now review the Moschonases' arguments on appeal.

## III. DISCUSSION

On appeal, the Moschonases present two issues for our consideration. As framed in their initial brief:

> The first issue presented is whether Petitioners were timely in filing their complaint against the Respondents within thirty (30) days after the expiration of Respondents' right to request prelitigation mediation, rather than within thirty (30) days from Respondents' respective replies to Petitioners' Notice of Claim, where both time periods are prescribed by West Virginia Code § 55-7B-6(i)(1).
>
> The second issue presented is whether the Circuit Court erred by assuming the limitations period began to run the first day of negligent care, rather than at the time when Petitioners knew or should have known of their claim.

11

We will address each of these issues in turn.

## A. Tolling Pursuant to W. Va. Code § 55-7B-6(i)(1)

This appeal requires us to address a question of first impression concerning the deadline for filing a medical malpractice complaint when the defendant health care providers file their responses to the notices of claim and certificates of merit before the time required by statute and do not request mediation. The Moschonases argue that they could bring their lawsuit within thirty days of when the respondents' deadline for serving a response to their notice of claims would have expired if no response had been served, in which case, their complaint would be timely filed. Dr. Giffi and JMC take the position that the complaint had to be filed no later than thirty days after their responses to the notices of claim were received by the Moschonases, and therefore the complaint was untimely.[5] After careful consideration of the statutory language, we conclude that the complaint had to be filed within thirty days of when the responses were received under the tolling provisions of W. Va. Code § 55-7B-6(i)(1).

West Virginia Code § 55-7B-6(i)(1) provides in pertinent part that:

---

[5] In many cases, thirty days after the deadline for serving a response will be later than thirty days after a response is received, but this is not necessarily true in every case. For example, if a health care provider mailed its response on the last day the statute allowed, it would be received by the plaintiff after the deadline for serving the response, and the thirty-day period would expire slightly later.

> Except for medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, and except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of mail of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs.

As the SCAWV declared in *Adkins v. Clark*, 247 W. Va. 128, 132, 875 S.E.2d 266, 270 (2022), West Virginia Code § 55-7B-6(i)(1) "provides three circumstances that begin the thirty-day clock to file the complaint if the statute of limitations has expired: (1) receipt of a response from the health care provider; (2) no response from the health care provider after 30 days; and (3) notification from a mediator that settlement was unsuccessful." The third circumstance clearly does not apply in this case because no demand for pre-suit mediation was ever made. For the reasons set forth below, we hold that the second circumstance only applies when a health care provider never responds to the notice of claim. Thus, once a health care provider responds, even if the response occurs before it is due, a plaintiff must file his complaint within thirty days or be forever barred from filing suit unless some other tolling rule applies.[6]

---

[6] According to the Moschonases, the MPLA provides three "options" to calculate the expiration of the tolling period. We disagree. The MPLA provides a thirty-day period within which to file a medical malpractice complaint. The starting point for that period

13

Although *Adkins* is not directly on point,[7] its language and reasoning are instructive and guide our analysis. In *Adkins*, the court indicated that the second scenario would apply when there was "no response from the health care provider [to the notice of claim and certificate of merit] after thirty days." In this case, that scenario would not apply because the responses from the health care providers were served within the thirty-day deadline. Scenarios one and two are mutually exclusive because a health care provider either responds within thirty days or it does not. Both cannot be true.

Moreover, the *Adkins* case refers to a non-response as the event which "triggers" the running of the thirty-day period for filing a complaint. As the *Adkins* court explained:

> Dr. Clark received the amended notice of claim and screening certificate of merit on May 26, 2020. Under West Virginia Code § 55-7B-6(f), Dr. Clark had thirty days from then to respond; she did not. Her non-response triggered circumstance

depends on the circumstances of the case, but once a triggering event for scenario one or two occurs, the statute of limitations begins to run, and the plaintiff has no choice as to when the deadline expires. The only event which allows the plaintiff to file later than the deadline established by scenario one or scenario two is a timely written request by the health care provider for pre-suit mediation, a circumstance not present in the case currently under review.

[7] In *Adkins*, "[t]he issue before [the Court was] the effect on the tolling provisions of the MPLA of Dr. Clark's letter asking for authorization to obtain medical records so that counsel could determine whether pre-suit mediation would be beneficial." *Adkins, id.* at 131, 875 S.E.2d at 269. In the present case, we are asked to determine the deadline for filing a complaint when health care providers serve their responses before they are required to do so and the responses are received by the plaintiffs before the statutory deadline for health care providers to serve their responses.

> two of West Virginia Code § 55-7B-6(i)(1): that the tolling
> ceases thirty days from the date a response would have been
> due. The statute of limitations ran in late July 2020 and Ms.
> Adkins did not file her complaint until November 2020.

*Id*. at 132; 875 S.E.2d at 270. In the present case, the triggering event for scenario two, a failure to respond to the notice of claim and the certificate of merit within thirty days, did not occur, but the triggering event for scenario one, receipt of responses from the health care providers, did. Thus, the thirty-day period for filing a complaint began to run from the date when the responses were received, and this lawsuit was therefore untimely.

Under the MPLA, health care providers are not required to serve a response or request mediation, but if they choose to do so, it must be within thirty days of receipt of the notice of claim, or in some cases, the certificate of merit.[8] If a health care provider fails to respond within thirty days of receiving the notice of claim and certificate of merit, they lose the right to demand pre-suit mediation. *Adkins v. Clark*, 247 W. Va. 128, 133, 875 S.E.2d 266, 271 (2022).

---

[8] While this subsection of the MPLA was not invoked in the instant case, West Virginia Code § 55-7B-6(d) provides that a claimant is permitted to provide a screening certificate of merit to the health care provider within sixty days of the date the health care provider receives the notice of claim if the claimant has insufficient time to obtain a screening certificate of merit prior to the expiration of the statute of limitations.

The Moschonases argue that they had the option to file their complaint under scenario two despite the health care providers serving their responses sooner than required. We reject this reading of the statute because it is not consistent with the language and purpose of the act. First, the only reasonable interpretation of the language "would be due" is the date a response is due if it has not already been served. Once a response is served, it is no longer due, and scenario two is moot. If the legislature had intended otherwise, it would have used language such as "is due" rather than "would be due."

Regarding the purpose of the MPLA, we note that it was fashioned to balance two competing interests: the need to promptly resolve disputes involving claims of medical malpractice and the desire to promote settlements without litigation. On the one hand, it was crafted in such a way as to ensure that health care providers had at least thirty days to determine whether to demand pre-suit mediation. That is why plaintiffs are required to file their notice of claim at least thirty days prior to filing suit under West Virginia Code § 55-7B-6(b). *See Adkins*, *id*. at 132, 875 S.E.2d at 270 ("[T]he plaintiff must simply wait thirty days [before filing a complaint] to give the healthcare provider the opportunity to request [pre-suit mediation]."); *State ex rel. Miller v. Stone*, 216 W. Va. 379, 383, 607 S.E.2d 485, 489 (2004) (per curiam) ("the Legislature's clear intent in enacting W. Va. Code § 55-7B-6 was to mandate that a plaintiff in a medical malpractice claim file his or her certificate of merit at least 30 days prior to filing his or her medical malpractice action so as to allow health care providers the opportunity to demand pre-litigation mediation."); *Elmore v. Triad*

16

*Hosps., Inc.*, 220 W. Va. 154, 161, 640 S.E.2d 217, 224 (2006) (per curiam) ("[I]t is clear under the provisions of West Virginia Code § 55-7B-6 that the Legislature intended that a health care provider be given thirty days to evaluate the claim and in which to assert his statutory right to invoke pre-suit mediation in order to resolve the claim.").

At the same time, the legislature did not want litigation to be postponed indefinitely while health care providers decided whether to demand pre-suit mediation. That is why health care providers are required to respond within thirty days of receiving the notice of claim, or certificate of merit if the plaintiff is proceeding under the subsection which allows a plaintiff to file his or her certificate of merit within sixty days of filing his notice of claim. *See* W. Va. Code § 55-7B-6(f) and (g).[9] It is also why the language creating the second scenario provides that a complaint must be filed within thirty days of the statutory deadline for health care providers to respond. The language applicable to scenario one, standing by itself, provides that a claimant may wait to file a complaint until thirty days after it is served with a response, but does not provide a cutoff date for how long the plaintiff may wait for a response before it is required to act. The scenario two language makes it clear that a claimant cannot wait indefinitely for a health care provider to serve a response. If a health care provider does not respond to a notice of claim (or certificate of

---

[9] If the parties need more time than the statute provides to obtain and review medical records or engage in settlement negotiations before commencing suit, they are free to enter into tolling agreements where they agree not to raise the statute of limitations as a defense. *Adkins*, 247 W. Va. at 133, 875 S.E.2d at 271.

merit, as the case may be) within thirty days of receipt, then the claimant must file his complaint within thirty days of when the response would have been due.[10] Thus, we need not interpret the language of the MPLA as tolling the statute of limitations until thirty days after the deadline for a health care provider to file its response when the health care provider chooses to serve a response earlier than that deadline. Our interpretation of the MPLA gives meaning to every part of the statute while avoiding a tortured or absurd interpretation of its language.

According to the Moschonases, the "whichever last occurs" language gives them the "option" to decide whether the statute of limitations expires at the end of thirty days from receipt of a response to the notice of claim, or thirty days from the date when a response to the notice of claim would be due, and that any other interpretation of the statute would render the "whichever last occurs" language meaningless. We reject this reading of the MPLA. As previously discussed, scenarios one and two are mutually exclusive. When one of them is triggered, the claimant has thirty days from the triggering event to file a complaint unless a timely written demand for pre-suit mediation has been made. If pre-suit mediation is requested, a different deadline for filing comes into play, thirty days from the time when a mediator notifies the claimant that mediation has been unsuccessful and is

---

[10] Under *Adkins*, a late response by a health care provider would be treated as a non-response and would not prevent scenario two from being triggered. *See Adkins*, *id.* at 132, 875 S.E.2d at 270 (stating that a late response "would have been untimely, so we are still in the category of a non-response.").

now concluded. Given that pre-suit mediation may take as long as forty-five days, it is likely that the deadline triggered by notification from the mediator will usually occur after the deadlines that would otherwise be triggered by scenarios one and two, but that is not necessarily true in every case.[11] The legislature's use of the language, "whichever last occurs," makes it clear that in the perhaps unlikely event that pre-suit mediation concludes prior to the receipt of a response to a notice of claim or the date when a response would have been due if one were not filed, that the last event will control when statutory tolling ends.

Our conclusion that the Moschonases had to file their complaint within thirty days of receiving responses to their notice of claim is bolstered by the rule of statutory construction that statutes of limitations are liberally construed in order to further their beneficial purposes and exceptions to such statutes are strictly construed. *Johnson v. Nedeff*, 192 W. Va. 260, 263, 452 S.E.2d 63, 66 (1994); *Adkins v. Clark,* 247 W. Va. 128, 133, 875 S.E.2d 266, 271 (2022); *Humble Oil & Refining Co. v. Lane*, 152 W. Va. 578, 583, 165 S.E.2d 379, 383 (1969); *Bradley v. Ohio Cnty. Bd. of Educ*., ___ W. Va. ___, ___, 909

---

[11] See W. Va. Code 55-7B-6(h) ("If the health care provider demands mediation pursuant to the provisions of subsection (g) of this section, the mediation shall be concluded within 45 days of the date of the written demand."). Although the MPLA limits pre-suit mediation to forty-five days, it is possible that the parties and/or mediator might conclude that mediation should end sooner.

S.E.2d 422, 429 (Ct. App. 2024). Accordingly, we affirm the ruling of the circuit court that the Moschonases' claims were not tolled by the provisions of W. Va. Code 55-7B-6(i)(1).

We also affirm the ruling of the circuit court rejecting the statutory tolling argument when it was reasserted in the Moschonases' motion to alter, amend or otherwise relieve from judgment. Neither Rule 59(e) nor Rule 60(b) provide vehicles for rehashing arguments that were previously made and lost. *See Couram v. S.C. Dept. of Motor Vehicles,* 2011 WL 1743264, at *1 (D. S.C. May 6, 2011) ("Rule 59 motions do not serve as an opportunity to rehash issues already ruled upon because a litigant is displeased with the result."); *Powderidge Unit Owners Assn. v. Highland Props., Ltd.*, 196 W. Va. 692, 705-06, 474 S.E.2d 872, 885-86 (1996) ("[R]ule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit….a Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled."); *United States v. Williams,* 674 F.2d 310, 312-13 (4th Cir. 1982) ("Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue.... Where the motion is nothing more than a request that the ... court change its mind ... it is not authorized by Rule 60(b)") (citation omitted).

In the present case, the Moschonases' first two reasons for seeking reconsideration and relief were that the circuit court failed to consider and address their position. First, they asserted that the circuit court did "not address Plaintiffs' argument that

20

they were entitled to file their complaint up to 30 days after Defendants' response to the Notice of [Claim] would have been due, pursuant to the statute's 'whatever occurs last' language." Second, they asserted that the circuit court did "not address Plaintiffs' argument that Defendants did not decline mediation in their January 20, 2023, and January 24, 2023, letters." It is apparent from the record, however, that the circuit court did consider the Moschonases' arguments, but was not persuaded by them. In fact, during the hearing on the motion to alter, amend or relieve from judgment, the circuit court made it clear that "the whichever last occurs [language] is very important language and… the Court was well aware of it when I entered the [dismissal] orders." To the extent that the Moschonases raised arguments concerning the tolling language in the MPLA, they were reiterating arguments which had already been considered by the circuit court and found wanting.

"Under Rule 59(e), the reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.*" Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 57, 717 S.E.2d 235, 244 (2011). Relief should be granted under Rule 59(e) where:

> (1) there is an intervening change in controlling law;
>
> (2) new evidence not previously available comes to light;
>
> (3) it becomes necessary to remedy a clear error of law; or
>
> (4) to prevent obvious injustice.

Syl. Pt. 2, *Mey v. Pep Boys – Manny, Moe & Jack*, *id.* at 50, 717 S.E.2d at 237 (2011). In this case, the Moschonases have not argued that the first two grounds apply, and the circuit court correctly held that the second two grounds, clear error of law and obvious injustice, were not met, so the circuit court properly denied relief under Rule 59(e).

Similarly, the circuit court did not abuse its discretion in denying relief under Rule 60(b). *See Merryman v. J.P. Morgan Chase Bank, N.A.,* No. 15-CV-9188 (VEC), 2017 WL 456470 (S.D. N.Y. Feb. 2, 2017) (denying relief where tolling argument was not raised until Rule 60(b) motion). As the SCAWV instructed in *Coffman v. W. Va. Div. of Motor Vehicles*, 209 W. Va. 736, 740, 551 S.E.2d 658, 662 (2001) (per curiam) (internal quotation marks omitted), "[r]arely is relief granted under [Rule 60(b)] because it provides a remedy that is extraordinary and is only invoked upon a showing of exceptional circumstances. Because of the judiciary's adherence to the finality doctrine, relief under this provision is not to be liberally granted."

## B. Discovery Rule

The statute of limitations applicable to this case provides in pertinent part that the action "must be commenced within two years of the date of [the] injury or death, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such medical injury, whichever last occurs[.]" W. Va. Code § 55-7B-4(a) (2022). In responding to the motion to dismiss, the

22

Moschonases did not argue that the discovery rule might have tolled the running of the statute of limitations, or that the statute of limitations might have started to run on any date other than the date when Mrs. Moschonas was diagnosed with a stroke. The possibility that the discovery rule might be applicable was raised for the first time in the Moschonases' motion to alter or amend or otherwise relieve from judgment, which was based on Rule 59(e), or alternatively, on Rule 60(b).

"Neither Rule 59(e) nor Rule 60(b) are appropriate for presenting new legal theories, arguments or claims that could have been raised previously." *Tice v. Veach*, 250 W. Va. 482, ___, 904 S.E.2d 484, 496 (Ct. App. 2024); s*ee also Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 56, 717 S.E.2d 235, 243 (2011) ("A motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued"); *Builders' Serv. and Supply Co. v. Dempsey*, 224 W. Va. 80, 85, 680 S.E.2d 95, 100 (2009) (per curiam) ("It is well established that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available, but not offered at the original proceeding."). Issues first raised in a Rule 59(e) motion, which could have been asserted earlier, are not properly preserved for appellate review. *See City of Fairmont v. W. Va. Mun. League, Inc.*, No. 18-0873, 2020 WL 201188, at *6 (W. Va. Jan. 13, 2020) (memorandum decision).

In this case, the Moschonases failed to raise the discovery rule in responding to the motion to dismiss and offered no explanation why that argument could not have been made before their motion to alter or amend or otherwise relieve from judgment. Consequently, this argument was not preserved for our review. *See Parsons v. Herbert J. Thomas Mem. Hosp. Assn.*, No. 16-1178, 2017 WL 5513620, at \*5 (W. Va. Nov. 17, 2017) (memorandum decision) (circuit court properly denied Rule 59(e) motion where plaintiffs argued for the first time that the statute of limitations began to run either when they first met with their attorney or when their expert witness communicated his findings to their law firm); *Quality Cleaning Products R.C., Inc. v. SCA Tissue North America, LLC*, 794 F.3d 200 (1st Cir. 2015) (trial court did not abuse its discretion in denying relief when discovery rule was not asserted until Rule 59(e) motion).

Similarly, in *Peck v. Scolapio*, No. 19-0165, 2020 WL 2735437, at \*5 (W. Va. May 26, 2020) (memorandum decision), the SCAWV affirmed the denial of a Rule 59(e) motion where the plaintiff failed to argue certain tolling factors until his Rule 59(e) motion, reasoning that:

> A review of the record reveals that, in response to respondent's motion for judgment on the pleadings, petitioner failed to argue that the statute of limitations was tolled based upon either his purported mental impairment or incarceration. Rather, petitioner raised these arguments for the first time in his Rule 59(e) motion to alter or amend the circuit court's order. Thus, these arguments were untimely raised.

24

In an effort to salvage their discovery rule argument, the Moschonases have invoked the plain error rule in their reply brief filed with this court, but we find their argument unpersuasive.[12] First, the argument concerning plain error was raised in a cursory manner with no discussion of the requirements for applying plain error, or any discussion of any facts which might justify applying it. This court is not required to address arguments which are raised in such a perfunctory manner. *See Megan W. v. Robert R.*, No. 23-ICA-353, 2024 WL 1592600, at *5 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision) ("It is well established that, '[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim[.]'" ) (quoting *State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015); *see also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("issues which are ... mentioned only in passing ... are not considered on appeal")).

Moreover, it is hard to see how this error could have been "plain" when the motions to dismiss were being considered by the circuit court, because the complaint did not allege any facts to suggest that the Moschonases did not, and could not, discover their potential claim within two years of Mrs. Moschonas's stroke. Nor did the complaint allege any facts which might have suggested that the discovery rule might apply. Even on appeal, the Moschonases have not indicated why they might have been unable to file their

---

[12] Perhaps tellingly, the discovery rule issue was not even mentioned in the Moschonases' notice of appeal.

complaint within the statute of limitations. Given the Moschonases' silence concerning the discovery rule in their response to the motions to dismiss, the trial court reasonably concluded that they agreed that the statute of limitations began to run on the day when Mrs. Moschonas suffered her stroke. Accordingly, we find no error.

## IV.  CONCLUSION

For the foregoing reasons, the Court affirms the August 9, 2023, August 18, 2023, and February 1, 2024, orders of the circuit court dismissing the complaint and denying the Moschonases' motion to alter or amend or otherwise be relieved from the judgment.

Affirmed.